John H. Owoc
6278 N Federal Hwy, #220
Fort Lauderdale, FL 33308
Email: jackowoc.ceo@gmail.com
Phone: 954-632-7119
Pro Se Plaintiff



FILED BY _____ D.C.

DEC 0 3 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:25-cv-60546-PMH

JOHN HENRY "JACK" OWOC, an individual
Plaintiff,

vs.

JORDAN SHAW,
Defendant.

_____/

## THIRD AMENDED COMPLAINT

**COMES NOW**, Plaintiff John Henry Jack Owoc, proceeding pro se (hereinafter "Plaintiff", and hereby files this third amended Complaint against Defendant, Jordan Shaw for Declaratory Relief, Injunctive Relief and Damages.  In support of this Complaint, Plaintiff states as follows:

### INTRODUCTION

1. This action arises from a deliberate, coordinated, and fraudulent scheme orchestrated by Defendant Jordan Shaw, who—through misrepresentation, abuse of legal process, and defamatory falsehoods—unlawfully stripped Plaintiff John H. Owoc of his rightful ownership, authority, and financial interest in Tropical Sunset 117, LLC ("TS 117"), a real

1

estate enterprise valued at roughly $65 million. As the sole capital contributor of $29 million, 60% ownership in profits and loss, 100% ownership in partnership capital, and managing member, Mr. Owoc built TS 117's success through 11 prior profitable transactions without any court intervention.

2.  Plaintiff John Owoc also brings this action against Defendant Jordan Shaw ("Defendant") for fraudulent financial misconduct, tax fraud, willful misrepresentation, and participation in an unlawful scheme that caused direct financial loss to the TS117 estate and to Plaintiff individually. Fraud is present throughout the factual chronology of this matter. Compounding the fraud, Defendant Shaw repeatedly made defamatory and slanderous statements to justify his unlawful takeover, falsely accusing Mr. Owoc of intending to default on an $18.5 million real estate closing in which Mr. Owoc was set to receive approximately $15 million in capital repayment and profit. Shaw further asserted—without a shred of evidence—that Mr. Owoc "has a history of using entities for fraudulent purposes," even though Plaintiff has never been convicted or found liable for any fraudulent business practice.

3.  The defamatory campaign continued with fabricated allegations that "Owoc intends to siphon assets from TS117 for personal benefit," despite the absence of any forensic accounting, financial record, or corporate documentation supporting such a claim. Defendant also asserted that "TS117's creditors and stakeholders are at risk due to Owoc's involvement," yet produced no creditor complaints, no stakeholder objections, and no financial records indicating any risk of harm. Shaw went so far as to claim that Plaintiff was "blocking real estate transactions" and even that "Jack Owoc has a history of destroying companies and leaving financial ruin in his wake." These assertions were

2

knowingly false and were strategically deployed to smear Mr. Owoc's reputation, manipulate third parties, and manufacture the appearance of an emergency where none existed.

4. On August 7, 2023, Mr. Owoc requested critical financial records after uncovering signs of serious financial misconduct, including unauthorized distributions and misappropriations by those purporting to manage TS 117's operations. Instead of providing transparency, Jordan Shaw, Branden Shaw, and Jonathan Owoc retaliated. On August 15, 2023, the same day Mr. Owoc renewed his demand for documentation, they secretly and illegally removed him from the Sunbiz records without his consent—an act executed solely to facilitate Shaw's subsequent fraudulent filings.

5. Shaw then filed a fraudulent Ex Parte motion that served as the cornerstone of the scheme, fabricating an emergency, omitting material facts, and presenting false statements about TS 117's finances and management. Through this deception, Shaw induced the court to appoint a Receiver, who—despite Mr. Owoc's 100% partnership capital ownership, 60% ownership in profits and loss, and sole funding of TS 117—has refused to pay him a single dollar in salary, return on investment, or distributions, while millions continue to be diverted to legal fees and administrative costs that benefit everyone except the rightful owner.

6. A critical component of the fraud involved the misuse of Stag Development LLC, a sham entity that never operated as a legitimate business. With no business bank account, no separate corporate identity, and no legal standing to sue, Stag Development functioned solely as the alter ego of Jonathan Owoc, who conducted all transactions through his personal business accounts and diverted more than $1.3 million in TS 117 funds.

3

7. When Mr. Owoc refused to sign an operating agreement that would have unlawfully surrendered control to individuals who contributed no capital, Shaw sought to obtain that control through force—via fraudulent filings, perjured statements, and abuse of the judicial process. The resulting receivership, based entirely on misrepresentations, threatens to consume Mr. Owoc's $29 million investment and the ~$55 million return it was poised to generate.

8. This case is not only a business disagreement, but it is also a premeditated fraudulent scheme, executed through slander, forged corporate filings, misuse of a sham LLC, and deliberate manipulation of the judicial system to steal control of a multimillion-dollar enterprise from the individual who solely financed and built it.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under federal law, including: The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962; Wire Fraud, 18 U.S.C. § 1343; Civil Rights Conspiracy, 42 U.S.C. § 1985(3)

10. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they are related to the federal claims.

11. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this judicial district. This case also falls under federal jurisdiction, as outlined in 28 U.S.C. § 1331.

## PARTIES

12. Plaintiff JOHN HENRY "JACK" OWOC ("Plaintiff") is a natural person and resident of the State of Florida. At all times relevant, Plaintiff was the founder, owner, and beneficiary

of TS 117 and the related real estate enterprises targeted by Defendant's fraudulent and racketeering activities. Plaintiff is the victim of the unlawful schemes described herein, including fraud, conversion, wire fraud, conspiracy, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

13. Defendant JORDAN SHAW ("Defendant") is an individual who resides, upon information and belief, in the State of Florida and is a licensed attorney. Defendant acted individually and in concert with co-conspirators—including Branden Shaw and Jonathan Owoc—to engage in a coordinated scheme to defraud Plaintiff, misappropriate TS 117 assets, submit fraudulent filings to the courts, and participate in racketeering activities through repeated acts of wire fraud, obstruction, and criminal conversion of estate property.

## SUMMARY OF MATERIAL FACTS

### Fraudulent removal of John H. Owoc as manager and unauthorized corporate actions

14. In early August 2023, Plaintiff **John H. Owoc**, the sole $29 million capital contributor, 60% ownership in profits and loss, 100% ownership in partnership capital, and managing member of **TS 117 LLC**, sought to obtain essential financial records after identifying signs of serious financial irregularities. On **August 7, 2023**, he formally requested profit-and-loss statements, bank records, accounting ledgers, construction costs, purchase prices, net profits, and all relevant TS 117 financial information due to concerns involving unauthorized distributions, misappropriation of funds, tax evasion, self-dealing, and collusion. When it became evident that these records would expose wrongdoing, **Jordan Shaw**, **Branden Shaw**, and **Jonathan Owoc** initiated a coordinated plan to remove him from control.

5

15. On **August 15, 2023**, the same day Plaintiff renewed his request for documentation, they secretly and unlawfully removed him from Sunbiz as the managing member of TS 117 without his knowledge or consent. This removal was the first step in a broader fraudulent scheme that Defendant **Jordan Shaw** advanced through a series of misrepresentations, defamatory statements, and abusive litigation tactics designed to seize control of a company representing roughly **$65 million in real estate assets**, including **$18.5 million in escrow** tied to a closing where Mr. Owoc was scheduled to receive approximately **$14– 15 million** in repayment and profit. Instead of addressing the financial misconduct allegations, Shaw manipulated the legal system to block that payout and induced the court to appoint a Receiver who has refused to pay Plaintiff a single dollar of salary, return on investment, or distributions—despite Plaintiff being the only individual who contributed capital to TS 117 and having independently transacted over **$450 million** in real estate throughout his career, including purchasing a Lithia Springs, Georgia property for $41 million and selling it for $87 million.

16. TS 117 had successfully completed eleven profitable real estate transactions without any court intervention, yet Shaw manufactured a false emergency through a **fraudulent Ex Parte motion**, omitting material facts and fabricating claims about TS 117's operations and Plaintiff's intentions. This filing was the catalyst for the entire scheme: it falsely asserted imminent risk, misrepresented financial realities, and relied on conjecture rather than evidence to manipulate the court into appointing an unnecessary and financially draining receivership. As a result, TS 117's funds—rather than being used for business operations or returning capital to the rightful investor—have been siphoned into legal fees for attorneys representing the Receiver and Shaw's associates, while the only person not

6

compensated is Plaintiff, the company's sole financial backer, 60% ownership in profits and loss, and 100% ownership in partnership capital.

17. Central to the fraud was Shaw's knowingly use of **Stag Development LLC**, a non-functioning shell company that never operated as a legitimate business. Although registered in Florida, Stag Development had **no business bank account**, no separate corporate identity, and no capacity to transact independently. All supposed Stag Development activity occurred through **Jonathan Owoc's two personal business accounts**, demonstrating that Stag Development was merely his alter ego with no legal standing to sue. Despite this, Shaw filed the Ex Parte motion on Stag's behalf to create the illusion of a legitimate dispute. Records show that Jonathan used these personal accounts to make **over $1.3 million in unauthorized payments** tied to TS 117 and diverted more than **$857,236** for improper purposes. Shaw's filings concealed these activities and further misrepresented Stag Development's ownership structure by falsely claiming that **Branden Shaw** was a member when official state records identify **only Jonathan Owoc** as the sole member.

18. This financial misconduct was compounded by self-dealing and concealed financial interests. Shaw maintained undisclosed entanglements through **Shaw Investments**, had potential financial interests tied to TS 117, and used his role as attorney to advance his own financial gain while undermining Plaintiff's real estate portfolio. TS 117's revenue was unlawfully used to fund legal attacks against Plaintiff, including unauthorized payments to **K&L Gates** far beyond what Plaintiff approved. Rather than acting as neutral counsel, Shaw weaponized the judicial system to fabricate control through litigation rather than through any legitimate business authority. When Plaintiff refused to sign an operating

agreement that would have stripped him of control in favor of individuals who contributed no capital, Shaw escalated to perjury, misrepresentation, and manufactured emergencies to forcibly override Plaintiff's authority.

19. The conduct of **Jordan Shaw**, **Jonathan Owoc**, and **Branden Shaw** formed a coordinated conspiracy designed to mislead the court, strip Plaintiff of control over TS 117, divert millions in business revenue, and create a fraudulent pretext for a receivership that benefited everyone except the person who funded the enterprise. Their actions—ranging from fabricated legal filings and concealment of financial crimes to misuse of sham corporate entities—constitute fraud, abuse of process, and racketeering. This lawsuit seeks to expose the full scope of the deception, restore Plaintiff's rightful control and financial interests, and hold each participant accountable for the orchestrated scheme that dismantled a business built entirely on Plaintiff's capital and expertise.

## **Defendant Fraudulent and Financial Misconduct (Tax Fraud)**

20. Defendant, along with Jonathan Owoc and Branden Shaw, engaged in a misrepresentation of ownership by falsely claiming authority to gift estate property, resulting in an unauthorized transfer that directly and unlawfully enriched Defendant Jordan Shaw. This illegal gift constituted an act of bad faith, unethical conduct, and unjust enrichment, and it was concealed from the court in a manner constituting fraud on the tribunal. The deliberate nondisclosure of this transaction deprived the TS117 estate of rightful property and caused measurable civil and criminal harm.

21. Defendant's efforts to conceal material financial information, including critical tax documents and real estate transaction details, in direct violation of Florida law governing

8

financial transparency and anti-fraud obligations. On October 13, 2023, Defendant sent what he referred to as the "Pandora Box" email, attached as **Exhibit B**, which serves as the smoking gun demonstrating his intent to obstruct Plaintiff's review of tax filings and suppress information necessary for accurate reporting. In that communication, Defendant admitted he was actively preventing Plaintiff from reviewing the tax return before submission, a clear acknowledgment that he was concealing financial misconduct.

22. Additional evidence of fraud is provided in the Affidavit of Paul R. Vidas, a Director from the accounting firm CBIZ LLC (**Exhibit C**), which establishes that two separate accounting firms confirmed Stag Development, LLC held no capital interest in the partnership, contributed no property or capital, and had no legitimate basis for profit allocation. The IRS Form K-1 filings likewise confirm that Plaintiff alone made all capital contributions to the partnership. Despite this, Defendant participated in structuring the entity in a manner that allowed him to siphon profits while evading all financial risk, in direct violation of fiduciary standards and the Florida Communications Fraud Act, § 817.034.

23. As 60% owner in profits and loss, 100% owner in partnership capital of Tropical Sunset 117, LLC, Plaintiff was legally entitled to full disclosure of financial records, tax filings, and all relevant transactional information. Defendant, acting in an executive legal and financial capacity, owed Plaintiff an unequivocal fiduciary duty to ensure accurate disclosures and lawful reporting. Instead, Defendant knowingly engaged in deceptive conduct, including concealing real estate transaction details, withholding tax documents and backup records, inflating or misrepresenting gross receipts, and mischaracterizing what information the tax filings contained. The "Pandora Box" email confirms Defendant understood .that Plaintiff had legal rights to review this financial information but

9

nevertheless interfered with oversight, blocked access to records, and submitted tax filings prepared without proper review—all of which strongly indicate intent to defraud.

24. Defendant's concealment of material documents, misrepresentation of financial information, and manipulation of tax filings constitute fraudulent misrepresentation, tax fraud, and violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and common law fraud principles. Florida Statutes § 817.034 expressly prohibits schemes to defraud and financial misrepresentations of the kind Defendant perpetrated, and Florida courts consistently recognize intentional concealment of material financial information to manipulate tax filings as actionable fraud.

25. Defendant's fraudulent actions caused significant financial harm to Plaintiff while unjustly enriching Defendant. The partnership was intentionally structured to allow Defendant to withdraw up to 40% of profits without contributing capital, while shifting all financial risk onto Plaintiff. Defendant further concealed material financial documents to avoid scrutiny and accountability. This conduct represents a flagrant breach of fiduciary duties imposed under Florida Statutes § 607.0831 and violates Florida Statutes § 689.071, which prohibits fraudulent conveyances and financial arrangements designed to deceive or defraud. Defendant's actions were purposefully designed to shield himself from financial liability while extracting maximum personal gain at Plaintiff's expense, constituting a sustained pattern of fraud, concealment, unjust enrichment, and abuse of fiduciary authority.

**<ins>Wire fraud</ins>**

26. On or about February 22, 2024, Defendant transmitted an Ex Parte Motion through the court's electronic service system, caused personal service of that motion to Plaintiff's

personal residence, and emailed the lawsuit to Plaintiff's counsel, despite knowing Plaintiff was represented and lacking any lawful basis for ex parte relief. A true and correct copy is attached as Composite **Exhibit A**

## Defamatory & False Statements by Jordan Shaw

27. Defendant **Jordan Shaw** made multiple defamatory and slanderous statements about Mr. Owoc, including the false allegation that he intended to default on a nearly completed $18.5 million real estate transaction in which Mr. Owoc was set to receive approximately $15 million in capital repayment and profit. Shaw further claimed—without evidence—that Mr. Owoc had a history of using business entities for fraudulent purposes, intended to siphon assets from TS117 for personal benefit, posed a risk to TS117's creditors and stakeholders, was blocking real estate transactions, and had a history of destroying companies and leaving financial ruin behind. None of these accusations were supported by forensic accounting, financial statements, creditor complaints, or any factual record. Mr. Owoc has never been convicted of or found liable for any fraudulent business practices.

28. Shaw made these statements despite knowing that TS117 had successfully completed eleven prior high-value and highly profitable real estate transactions, that the twelfth transaction was already effectively completed pending routine closing procedures, and that Mr. Owoc had no history of defaults or fraudulent conduct. Shaw also knew that Mr. Owoc had retained attorney Robert Reynolds for $40,000 specifically to ensure that no default would occur.

29. The real obstacle to closing arose because key documents required to prevent default had to be signed by Jonathan Owoc, who previously served as Managing Member of TS117,

11

yet Shaw's side refused to authorize him to execute the necessary paperwork. This refusal placed the transaction at immediate risk of default and threatened the $15 million owed to Mr. Owoc. Acting quickly, and recognizing the gravity of the impending default, Mr. Owoc again engaged Robert Reynolds, who determined that the only viable way to prevent default was for Mr. Owoc himself to sign the required documents. Through this intervention—made under severe time pressure—the default was avoided. The successful closing confirms that the supposed "default risk" cited by Shaw was false and artificially manufactured by the unjustified refusal to authorize Jonathan Owoc's signature.

## CAUSE OF ACTION:

## COUNT I

## VIOLATION OF FEDERAL RICO (18 U.S.C. §§ 1962(c) & 1962(d))

### Against Defendant Jordan Shaw

30. Plaintiff John Owoc ("Plaintiff") realleges and incorporates all prior paragraphs as though fully set forth herein.

31. This action is brought under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d), based on Defendant Jordan Shaw's ("Defendant") knowing participation in, direction of, and conspiracy to operate an enterprise through a pattern of racketeering activity.

32. The enterprise consists of Jordan Shaw, Jonathan Owoc, and Branden Shaw, acting together with various attorneys and firms they funded with TS 117's money, including those who participated in the scheme to seize control of TS 117, remove Plaintiff, and divert estate assets. This enterprise operated as an association-in-fact whose common purpose was to take control of TS 117, prevent Plaintiff from receiving millions in

12

distributions, misappropriate TS 117 assets—including the high-end appliances diverted to Jordan Shaw—file fraudulent legal documents to manipulate the courts, defame Plaintiff to fabricate a false narrative of wrongdoing, and enrich themselves by dismantling Plaintiff's $65 million real-estate operation. The enterprise existed separate from any individual member and operated continuously for several years.

33. B. **Pattern of Racketeering Activity**

34. Defendant Shaw engaged in multiple predicate acts under 18 U.S.C. § 1961(1). First, Shaw committed wire fraud in violation of 18 U.S.C. § 1343 by transmitting a fraudulent Ex Parte Motion via the court's electronic service platform and causing personal service of that motion to Plaintiff's residence on or about February 22, 2024, intending to deceive the court and unlawfully induce the appointment of a receiver; the transmitting was part of a broader scheme to obstruct Plaintiff's rights, manipulate litigation, and seize control of TS 117. Shaw also engaged in wire fraud in violation of 18 U.S.C. § 1343 by electronically disseminating false and defamatory statements—including claims that Plaintiff intended to default, siphon assets, block sales, and had a history of business fraud—knowing the statements were false and intended to damage Plaintiff's credibility for financial advantage. Additionally, Shaw engaged in theft and conversion constituting RICO predicates by accepting high-end appliances illegally diverted from TS 117, knowing they belonged to the estate and were transferred without authority or compensation; the appliances were worth thousands of dollars and their misappropriation constitutes grand theft under Florida law and a qualifying predicate act. Shaw further participated in a conspiracy to defraud in violation of 18 U.S.C. § 371 by working with Jonathan and Branden Shaw to misappropriate estate assets, interfere with TS 117's operations, and prevent Plaintiff from

receiving distributions owed from an $18.5 million transaction. Shaw also engaged in obstruction of justice in violation of 18 U.S.C. §§ 1503 and 1512 by attempting to influence the judicial process through fraudulent filings designed to mislead the court and deprive Plaintiff of control of his business.

35. C. **The Scheme and Its Execution**

36. Shaw engaged in a deliberate, coordinated, and multi-year scheme of fraudulent conduct designed to dismantle Plaintiff's business empire and seize control of TS 117. This included falsely alleging that Plaintiff intended to default on an $18.5 million transaction; falsely claiming that Plaintiff was siphoning assets; misrepresenting Plaintiff as a danger to creditors; suppressing tax documents and withholding essential financial information; misappropriating TS 117 assets, including the appliances diverted to Shaw; using TS 117 revenue to fund lawyers who were orchestrating a hostile legal takeover; transmitting a fraudulent Ex Parte Motion to induce the appointment of a receiver; engineering Plaintiff's removal from control of TS 117; and diverting profits and opportunities to himself and his co-conspirators. These acts were not isolated but formed a continuous pattern of racketeering activity carried out to defraud Plaintiff and take over his $65 million enterprise.

37. D. **RICO 18 U.S.C. § 1962(c): Operation or Management**

38. Defendant Jordan Shaw directly participated in and managed the affairs of the enterprise by orchestrating legal filings, directing and receiving misappropriated estate property, coordinating defamatory and fraudulent communications, weaponizing the court system through fraudulent motions, and manipulating tax and financial processes to further the

scheme. His role was central rather than peripheral, and he knowingly directed and facilitated the enterprise's fraudulent operations.

39. E. **RICO 18 U.S.C. § 1962(d): Conspiracy**

40. Defendant Shaw also conspired with Jonathan Owoc and Branden Shaw to commit multiple predicate acts, agreeing to misuse TS 117 revenue to finance a hostile legal takeover, divert estate assets such as appliances for Shaw's personal benefit, manufacture a false default to block Plaintiff's $15 million distribution, obtain appointment of a receiver through fraudulent means, and eliminate Plaintiff's ownership and operational control altogether. Each co-conspirator knowingly agreed to and participated in the broader effort to defraud Plaintiff and seize control of TS 117.

41. As a direct and proximate result of Defendant Shaw's RICO violations, Plaintiff suffered substantial damages, including loss of control of his $65 million enterprise, loss of millions in expected distributions that caused the foreclosure of his $40 million homestead, reputational injury caused by defamatory communications, financial losses resulting from the fraudulent receiver appointment, theft and conversion of estate property, and significant legal expenses incurred to combat the fraudulent scheme. Under 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages, attorneys' fees, and all other available relief.

42. Plaintiff demands judgment against Defendant Jordan Shaw for violations of 18 U.S.C. §§ 1962(c) and 1962(d), treble damages, attorneys' fees, costs, injunctive relief, and any other relief deemed just and proper by the Court.

## COUNT II

### WIRE FRAUD (18 U.S.C. § 1343) Against Defendant Jordan Shaw

43. Plaintiff John Owoc ("Plaintiff") realleges and incorporates all preceding paragraphs as though fully set forth herein.

44. This Cause of Action arises from Defendant Jordan Shaw's ("Defendant") intentional and unlawful use of interstate electronic communications – including the court's electronic service system - to execute and further a fraudulent scheme in violation of 18 U.S.C. § 1343.

45. Defendant Jordan Shaw has engaged in a broader pattern of deceptive conduct, including making false accusations, manufacturing the appearance of default on a multimillion-dollar real estate transaction, misappropriating estate property, and disseminating knowingly false statements about Plaintiff's business integrity.

46. As part of this broader fraudulent scheme, Defendant knowingly used the court's electronic service platform to manipulate legal proceedings, misrepresent material facts, and interfere with Plaintiff's legal rights.

47. On or about February 22, 2024, Defendant transmitted an Ex Parte Motion through the court's electronic service system, caused personal service of that motion at Plaintiff's home, and emailed the lawsuit to Plaintiff's counsel, despite knowing Plaintiff was represented and lacking any lawful basis for ex parte relief. A true and correct copy is attached as Composite **Exhibit A.**

48. Defendant used this electronically transmitted Ex Parte Motion as a tool of deception, attempting to secure legal advantage through misrepresentation, concealment of material facts, and improper ex parte communication.

49. Defendant's electronic transmission was not an innocent procedural act; rather, it was a calculated step in furtherance of his ongoing scheme to:

16

    i.       mislead the court with false narratives regarding Plaintiff;

    ii.      intimidate Plaintiff through improper ex parte contact;

    iii.     create false impressions of wrongdoing; and

    iv.     insert fraudulent assertions into the litigation record.

50. Defendant knowingly and willfully used interstate wire communications—via the court's electronic service platform—for the purpose of executing this fraudulent scheme, satisfying the elements of wire fraud under 18 U.S.C. § 1343.

51. Defendant's actions were intended to deceive, cause harm, and obstruct Plaintiff's exercise of his legal rights, and were part of a continuous course of misconduct that included defamatory statements, false allegations of default, and the unauthorized diversion of TS 117 estate property.

52. As a direct and proximate result of Defendant's wire-based fraudulent scheme, Plaintiff suffered harm, including legal costs, reputational injury, interference with property rights, and disruption of ongoing litigation.

## COUNT III – DEFAMATION (LIBEL AND SLANDER)

53. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

54. Defendant Jordan Shaw knowingly made and published false statements of fact concerning Plaintiff, including but not limited to:

55. Accusing Plaintiff of intending to default on an $18.5 million real estate transaction;

56. Claiming Plaintiff sought to siphon assets from TS117 for personal benefit;

57. Asserting Plaintiff had a "history of using business entities for fraudulent purposes";

58. Alleging Plaintiff "destroys companies and leaves financial ruin in his wake";

59. Stating Plaintiff was "actively blocking real estate transactions and preventing buyers from closing on homes";

60. Claiming TS117's creditors and stakeholders were "at risk" solely due to Plaintiff's involvement.

61. Defendant published these statements to third parties, including individuals involved in the real estate transaction and stakeholders of TS117.

62. Defendant's statements were false. Plaintiff has never been convicted, sanctioned, or held liable for fraudulent business practices; no evidence supports Defendant's accusations.

63. Defendant acted with actual malice, knowing the statements were false or with reckless disregard for their truth.

64. Defendant's statements harmed Plaintiff's reputation, standing in the business community, and ability to complete multimillion-dollar transactions.

65. As a direct and proximate result of Defendant's defamation, Plaintiff suffered damages exceeding the jurisdictional minimum, including reputational injury, loss of business opportunities, emotional distress, and economic harm.

66. WHEREFORE, Plaintiff demands judgment against Defendant Shaw for compensatory, presumed, and punitive damages.

## COUNT IV – BUSINESS DISPARAGEMENT / TRADE LIBEL

67. Plaintiff incorporates all preceding allegations.

68. Defendant Jordan Shaw intentionally published false statements disparaging Plaintiff's business practices, financial integrity, and involvement in TS117.

69. These statements were made with the intent to interfere with Plaintiff's ongoing real estate transaction worth approximately $18.5 million and to undermine Plaintiff's standing with business partners, investors, and stakeholders.

70. Defendant's false accusations, including claims that Plaintiff intended to siphon assets, default on contracts, and harm creditors, were calculated to dissuade third parties from conducting business with Plaintiff.

71. Defendant knew or should have known that these statements would cause economic harm.

72. Plaintiff suffered special damages, including disruption of real estate negotiations, lost opportunities, loss of capital repayment, and injury to business relationships.

73. WHEREFORE, Plaintiff seeks compensatory and punitive damages for business disparagement.

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

74. Plaintiff incorporates all prior allegations.

75. Plaintiff was a party to a nearly completed $18.5 million real estate transaction, under which Plaintiff was set to receive approximately $15 million in capital return and profits.

76. Defendant Jordan Shaw was aware of the transaction and Plaintiff's expectancy of financial benefit.

77. Defendant intentionally interfered with this transaction by making false, slanderous, and damaging statements accusing Plaintiff of intending to default, committing fraud, siphoning assets, and endangering creditors.

78. Defendant's conduct caused third parties to question Plaintiff's integrity and reliability, thereby disrupting or delaying the transaction.

19

79. Defendant's interference was intentional, unjustified, and malicious.

80. As a direct and proximate result, Plaintiff sustained substantial financial losses.

81. WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages for tortious interference.

## COUNT VI

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

82. Plaintiff incorporates all prior allegations.

83. Plaintiff had valid and lucrative business expectancies involving real estate and corporate activities connected to TS117 and other ventures.

84. Defendant Jordan Shaw knew Plaintiff was engaged in these business opportunities.

85. By falsely stating that Plaintiff was blocking transactions, destroying companies, acting fraudulently, and placing creditors at risk, Defendant intentionally sought to prevent third parties from engaging in business with Plaintiff.

86. Defendant's actions were independently unlawful because they involved defamation and business disparagement.

87. Defendant's conduct directly caused the loss of prospective business relationships and profits.

88. WHEREFORE, Plaintiff seeks compensatory and punitive damages.

## COUNT VII – FALSE LIGHT INVASION OF PRIVACY

89. Plaintiff incorporates prior allegations.

20

90. Defendant Jordan Shaw publicized statements placing Plaintiff in a highly offensive and false light by portraying him as fraudulent, dishonest, financially reckless, and harmful to creditors.

91. Defendant's portrayal would be highly offensive to any reasonable person in Plaintiff's position.

92. Defendant acted with knowledge of falsity or reckless disregard for the truth.

93. Plaintiff suffered emotional harm, reputational damage, and business injury.

94. WHEREFORE, Plaintiff seeks compensatory and punitive damages.

## COUNT VIII – INJURIOUS FALSEHOOD

95. Plaintiff incorporates prior allegations.

96. Defendant Jordan Shaw published false statements that directly impugned Plaintiff's property, business assets, and financial integrity.

97. Defendant's accusations—specifically that Plaintiff intended to siphon assets from TS117 and harm creditors—were materially misleading and designed to create distrust among investors and stakeholders.

98. The statements caused measurable, pecuniary harm to Plaintiff's business interests.

99. WHEREFORE, Plaintiff seeks special, general, and punitive damages.

## COUNT IX – NEGLIGENCE (ALTERNATIVE THEORY)

100. Plaintiff incorporates all prior allegations.

101. In the alternative, if Defendant did not act intentionally, Defendant Jordan Shaw acted negligently in making statements without verifying their truth.

21

102.	A reasonable person would have refrained from making unverified, damaging accusations of fraud, asset siphoning, and creditor endangerment.

103.	Defendant's negligence caused foreseeable harm to Plaintiff's reputation, business dealings, and financial interests.

104.	WHEREFORE, Plaintiff seeks compensatory damages.

## COUNT X -CONVERSION

### Against Defendant Jordan Shaw

105. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106. TS 117 purchased high-end appliances valued in the thousands of dollars for business use in connection with one of its real estate properties.

107. These appliances were the lawful property of TS 117 and part of the TS 117 estate in which Plaintiff Jack Owoc held a legal and equitable ownership interest.

108. Plaintiff never authorized, approved, or consented to the transfer, diversion, gifting, or disposal of the appliances to Defendant Jordan Shaw, nor were the appliances ever intended to be used as compensation for legal services or for any personal benefit of Defendant.

109. When Plaintiff inquired about the missing appliances, Branden Shaw and Jonathan Owoc admitted that they had delivered the appliances to Defendant Jordan Shaw, claiming that he was "helping them out legally."

110. Defendant Jordan Shaw knowingly accepted, received, and exercised dominion and control over the appliances despite having no ownership rights or lawful authority to possess them.

111. Defendant Jordan Shaw's acceptance and retention of the appliances deprived Plaintiff and the TS 117 estate of possession, use, and control of the property.

112. Defendant Jordan Shaw's conduct constitutes conversion, as he intentionally exercised wrongful dominion over property belonging to Plaintiff and the TS 117 estate, inconsistent with their ownership rights.

113. Defendant Jordan Shaw knew or should have known that the appliances were not lawfully his and had been diverted without Plaintiff's consent, thereby rendering his possession wrongful from the moment of receipt.

114. The unauthorized diversion of these appliances—worth thousands of dollars—constitutes not only grand theft under Florida law but also a clear civil conversion, because Defendant Jordan Shaw intentionally interfered with Plaintiff's possessory rights in a manner reflecting deliberate misappropriation.

115. Defendant Jordan Shaw acted in concert with Branden Shaw and Jonathan Owoc, forming a scheme to misappropriate and convert estate assets for Jordan Shaw's personal benefit.

116. Defendant Jordan Shaw's conduct was intentional, wrongful, and undertaken with the purpose of depriving Plaintiff of property belonging to the TS 117 estate.

117. As a direct and proximate result of Defendant Jordan Shaw's conversion, Plaintiff suffered damages including: the full value of the converted appliances; loss of estate assets; financial injury to Plaintiff's ownership interest; and additional expenses associated with investigation and recovery efforts.

## COUNT XI – FRAUDULENT MISREPRESENTATION

118. Plaintiff incorporates all preceding allegations as though fully set forth herein.

119. Defendant Jordan Shaw knowingly made material misrepresentations and engaged in deceptive practices concerning ownership authority, tax filings, partnership structure, and financial disclosures.

120. Defendant misrepresented that he possessed lawful authority to receive an estate asset through an unauthorized "gift," despite knowing the estate property could not legally be transferred by Jonathan Owoc or Branden Shaw.

121. Defendant further misrepresented the financial structure and obligations of Tropical Sunset 117, LLC, including concealing that he had contributed no capital while improperly claiming rights to profits.

122. Defendant intentionally withheld tax documents, concealed real estate transaction details, and submitted or facilitated tax filings containing materially false information.

123. Defendant acted with the intent that Plaintiff rely on these misrepresentations to Plaintiff's detriment.

124. Plaintiff justifiably relied on Defendant's representations because Defendant acted in an executive financial and legal capacity.

125. As a direct and proximate result, Plaintiff suffered financial damages, loss of estate property, and deprivation of accurate tax and financial reporting.

126. WHEREFORE, Plaintiff demands compensatory and punitive damages.

## COUNT XII – FRAUDULENT CONCEALMENT

127. Plaintiff incorporates all preceding allegations.

24

128. Defendant Jordan Shaw owed Plaintiff a fiduciary and statutory duty to disclose material financial information, including tax filings, capital contributions, partnership records, and real estate transaction details.

129. Defendant intentionally concealed material facts, including:

a.   The unauthorized and illegal transfer of estate property to himself;

b.    The absence of any capital contributions by Stag Development, LLC or by himself;

c.   The true financial performance of the partnership;

d.   The contents of tax filings and "gross receipts" claims;

e.   His interference preventing Plaintiff from reviewing tax returns.

130. Defendant actively obstructed Plaintiff's review, as proven by the October 13, 2023 "Pandora Box" email in which Defendant admits he prevented Plaintiff from accessing tax records.

131. Defendant concealed these facts to secure improper financial gain and avoid scrutiny.

132. Plaintiff suffered substantial damages as a result.

133. WHEREFORE, Plaintiff seeks compensatory and punitive damages.

## COUNT XIV – UNJUST ENRICHMENT

134. Plaintiff incorporates all prior allegations.

135. Defendant Jordan Shaw unlawfully received financial benefits, profits, and estate property through fraudulent conduct and without providing any corresponding value, capital contribution, or legal entitlement.

25

136. Defendant benefitted at Plaintiff's expense and retained property and profits in a manner that would be inequitable and unjust under Florida law.

137. Defendant's receipt of benefits resulted directly from fraudulent concealment, misrepresentation, and obstruction.

138. Equity requires disgorgement of all profits, property, and gains obtained by Defendant.

139. WHEREFORE, Plaintiff requests restitution, disgorgement, and monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JOHN HENRY "JACK" OWOC respectfully demands judgment against Defendant JORDAN SHAW as follows:

I. Compensatory Damages in an amount to be proven at trial, including but not limited to:

a. The full value of all TS 117 property, assets, appliances, funds, and business opportunities wrongfully diverted, misappropriated, stolen, or converted by Defendant and his co-conspirators;

b. All financial losses incurred as a result of the fraudulent Ex Parte motion, the unlawful appointment of a receiver, and the forced removal of Plaintiff from control of his businesses;

II. Declaratory Judgment restoring Plaintiff as the rightful managing member of TS 117 LLC.

III. Punitive damages to deter future fraudulent conduct.

IV. Immediate injunctive relief to prevent further mismanagement or dissipation of TS 117 LLC's assets.

V. Attorney's fees and costs incurred in bringing this action. Defendants' conduct constitutes a deliberate and malicious scheme to defraud Plaintiff, obstruct his oversight, and facilitate continued financial misconduct.

December 3, 2025.

Respectfully submitted,

John H. Owoc
6278 N Federal Hwy #220
Fort Lauderdale, FL 33308
Email: jackowoc.ceo@gmail.com
Phone: 954-632-7119
Pro Se Plaintiff